UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

CAROLYN P. O/B/O T.R.M.,[1]

                                             Plaintiff,                    DECISION AND ORDER

-vs-
                                                                          20-CV-6650 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                                             Defendant.

———————————————————————

## INTRODUCTION

Carolyn P. brings this action pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's

application for Supplemental Security Income ("SSI") benefits on behalf of her son, T.R.M.

("Plaintiff"), who was between twelve and thirteen years old at the time of the

Commissioner's decision. Both parties have moved for judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., June 24, 2021, ECF No. 14;

Def.'s Mot., Aug. 23, 2021, ECF No. 16. Plaintiff argues that the Commissioner's decision

should be reversed and remanded because the Administrative Law Judge applied the

incorrect age category in his functional equivalence analysis, failed to properly evaluate

three opinions in the record, and made findings in his functional equivalence analysis that

were not supported by substantial evidence. Pl. Mem. of Law, June 24, 2021, ECF No.

15. The Commissioner disputes Plaintiff's contentions.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 14] is denied, and the Commissioner's motion [ECF No. 16] is granted. The Clerk is directed to close this case.

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff's Application and the Hearing Before the ALJ

Plaintiff's SSI application was completed in July 2017, alleging a disability onset date of November 29, 2006, the date of Plaintiff's birth. Transcript ("Tr."), 188, Feb. 25, 2021, ECF No. 11. In his application, Plaintiff listed attention deficit hyperactivity disorder ("ADHD") and Asperger's syndrome ("Asperger's") as his disabling conditions. Tr. 211. On September 8, 2017, Plaintiff was notified of the Commissioner's initial determination that Plaintiff was not disabled and therefore did not qualify for SSI benefits. Tr. 137. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 143.

Plaintiff's request was approved, and the hearing was scheduled to be held via videoconference on December 14, 2018. Tr. 83. Prior to the hearing, Plaintiff's counsel submitted a brief outlining his theory of the case. Tr. 323–327. The brief summarized Plaintiff's condition as follows:

> [Plaintiff]'s severe impairments include Attention Deficit Disorder . . . and Autism . . . . Tyler's intellectual functioning is within normal limits . . ., but his severe impairments cause problems with adaptive behavior . . . . [that] cause him . . . to have at least marked limitations in the areas of interacting with others, attending and completing tasks, and caring for himself.

Tr. 323.

At the hearing, Plaintiff testified that he is in Middle School, but that he is "very badly organized" and hasn't looked at his report card. Tr. 90. He stated that he sometimes does his homework on his own and sometimes needs help from his mother, and that the only help he needs at school is to have a scribe who writes down what he says because he has "really messy handwriting." Tr. 90–91. Plaintiff said that he gets bullied but that he also has friends, so on balance he gets along with the other kids in school "fairly good." Tr. 91. He gets along "with certain teachers well and others less," but has not been sent to the principal's office for any behavioral issues. Tr. 91–92. With respect to focusing at school, Plaintiff stated that he is okay "paying attention, working," but that he is less so in "actually understanding . . . ." Tr. 99. He "sometimes" sees a counselor at school, and sees a counselor outside of school every week. Tr. 100. At home, Plaintiff is in charge of keeping his own room clean, and some other chores such as "[k]eeping the living room clean and sometimes washing dishes," but his mom has to remind him. Tr. 96. His hobbies are Legos and video games, and he plays them daily. Tr. 96.

In addition, the ALJ heard testimony from Plaintiff's mother ("Mom"), and from his care coordinator through Medicaid Waiver Services.[2] Mom testified that Plaintiff takes 30 milligrams of Vyvanse each day to "help[ ] him in school kind of get through the day," and keep him from "bouncing off the walls." Tr. 101–02. She stated that she has not been able

---

[2] According to the website for the New York State Office for People with Developmental Disabilities, "[t]he Home and Community Based Services Waiver is the Medicaid program that provides opportunities for adults and children with intellectual and developmental disabilities to receive services in their own home or community." *See* https://opwdd.ny.gov/providers/home-and-community-based-services-waiver (last accessed on March 16, 2022).

to get Plaintiff to a psychiatrist yet, so he is just taking medication prescribed to him by his pediatrician and getting weekly counseling through the local ARC. Tr. 102. Further, at school Plaintiff has an Individualized Education Plan ("IEP") that provides for occupational therapy, speech therapy, physical therapy, a scribe to help with writing, and "accommodations like extra time on tests." Tr. 103. Mom also testified that Plaintiff struggles doing his work, and is very oppositional. Tr. 104. He apparently has "meltdowns" over such things as being told to turn off his video games, and will lie to avoid doing things he doesn't like, such as brushing his teeth and taking a bath. Tr. 104. She stated that Plaintiff is "oblivious to how others are responding to him," and only allows for two-way communication if the other person is saying something he's interested in. Tr. 105. Plaintiff has one friend at school, and is looking for a new Boy Scout troop because he doesn't get along well with the kids in his current troop. Tr. 107. When Plaintiff gets really behind from not doing his schoolwork, and teachers address the issue with him at school, Plaintiff's anxiety peaks to the point that he vocalizes suicidal thoughts. Tr. 110.

Plaintiff's care coordinator, Kimberly Ann Raulin, testified that she had been working with Plaintiff for roughly eight months, and saw him every couple of months. Tr. 115, 119. Her job "is to facilitate connections between [Plaintiff] and his mother and the services that are available for the developmentally disabled." Raulin advised the ALJ that at the time of the hearing, Plaintiff was working with community habilitation[3] workers to improve on his activities of daily living, such as "encouraging him to shower, to brush his

_____

[3] The Supreme Court gave a succinct definition for "habilitation" in *Youngberg v. Romeo*, 457 U.S. 307 (1982), when it explained that the "principal focus of habilitation is upon training and development of needed skills." *Id.* at 309 n. 1 (quoting Brief for American Psychiatric Association as Amicus Curiae at 4, n. 1). *See also Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 300 n. 4 (D. Conn. 2008).

teeth, to clean his room." Tr. 116. In response to the ALJ's inquiry into her assessment of

Plaintiff's limitations in the activities of daily living, Raulin responded:

> It's a sensory thing a little bit with the showers, the brushing of the teeth, getting his hair cut . . . .
>
> Also, his focus is such that he needs somebody there constantly to remind him to do things because he's easily distracted . . . . He's a brilliant little boy, but just the focus. He can't focus long enough just to play a simple game like that without somebody being right there and it's the same with the [activities of daily living].
>
> * * *
>
> I've seen he doesn't make eye contact. He also – he's not appropriate sometimes in the way he speaks to people . . . . he doesn't understand social limitations . . . . Just not having real good appropriate communication with people.
>
> * * *
>
> I worry a little bit about him out in the community. If he doesn't have somebody right there watching him, is he going to wander off, is he going to go into traffic or something like that. It's not that I think he's not capable of avoiding it. I don't think he's paying attention.

Tr. 117–19.

Determining Disability by Evaluating the "Whole" Child

Pursuant to 42 U.S.C. § 1382c(a)(3)(C)(i), "[a]n individual under the age of 18 [i.e.,

a "child"] shall be considered disabled for the purposes of [SSI benefits] if that individual

has a medically determinable physical or mental impairment, which results in marked and

severe functional limitations, and which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." The

Commissioner has established a three-step process for evaluating whether a child is

disabled. First, the Commissioner must find the child not disabled if he or she is

performing "substantial gainful activity."[4]  20 C.F.R. § 416.924(a). Next, provided the child is not performing substantial gainful activity, the Commissioner must evaluate whether or not the child has "severe" mental and/or physical impairments. *Id.* If the child has a severe impairment(s), the Commissioner must then determine whether the impairment meets the durational requirement, *and* meets or medically equals the severity of an impairment in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, or if it functionally equals the listings. 20 C.F.R. § 416.924(d).

If the severe impairment does not meet or medically equal a listing, the Commissioner employs the "whole child" approach outlined in 20 C.F.R. § 416.926a(a) to determine functional equivalence. *Title XVI: Determining Childhood Disability Under the Functional Equivalence Rule-the "Whole Child" Approach*, SSR 09-1P, 2009 WL 396031, at *2 (S.S.A. Feb. 17, 2009). "'Functioning' refers to a child's activities; that is, everything a child does throughout the day at home, at school, and in the community, such as getting dressed for school, cooperating with caregivers, playing with friends, and doing class assignments." Hence, when making a finding regarding functional equivalence, the Commissioner focuses first on the child's activities, and evaluates how appropriately, effectively, and independently the child functions compared to children of the same age who do not have impairments. *See, e.g., Title XVI: Determining Childhood Disability-the Functional Equivalence Domain of "Acquiring & Using Information"*, SSR 09-3P, at *1 (S.S.A. Feb. 17, 2009) (citing 20 CFR 416.926a(b) and (c)). The Commissioner then evaluates the effects of a child's impairment(s) by rating the degree

---

[4] In rough terms, "substantial gainful activity" is work activity that involves significant mental and physical activities, and for which the worker is being paid. *See* 20 C.F.R. § 416.972.

to which the impairment(s) limits functioning in six "domains." *Id*. The six domains of functioning are: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

To functionally equal the listings, an impairment "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A child has a "marked" limitation in a domain when his impairment(s) interfere seriously with his ability to independently initiate, sustain, or complete one or more activities. 20 C.F.R. § 416.926a(e)(2). A child has an "extreme" limitation in a domain when his impairment(s) interfere very seriously with his ability to independently initiate, sustain, or complete one or more activities. 20 C.F.R. § 416.926a(e)(3).

The ALJ's Decision in Plaintiff's Case

On May 14, 2019, the ALJ issued a decision denying Plaintiff's claim for SSI benefits. Tr. 53. At step one of the three-step evaluation process for children, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the application date. Tr. 39. At step two, the ALJ determined that Plaintiff has the following severe impairments: autism spectrum disorder level I, and attention deficit hyperactivity disorder ("ADHD"). Tr. 39.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria of listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 41. Therefore, the ALJ conducted a "whole child" functional equivalence analysis, considering Plaintiff to be a "school-age child (i.e., a child age 6 to the attainment of age 12) . . . ." Tr. 47. After considering the evidence of record, the ALJ found that Plaintiff has: less than

marked limitation in acquiring and using information (Tr. 47), marked limitation in attending and completing tasks (Tr. 48), less than marked limitation in interacting and relating with others (Tr. 50), no limitation in moving about and manipulating objects (Tr. 51), less than marked limitation in the ability to care for himself (Tr. 52), and less than marked limitation in health and physical well-being (Tr. 53). In short, the ALJ found that Plaintiff does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning, or "extreme" limitation in one domain of functioning. Accordingly, the ALJ concluded that Plaintiff *is not* disabled for the purposes of SSI. Tr. 53.

Plaintiff sought review of the ALJ's decision with the Commissioner's Appeals Council, but review was denied on June 20, 2020. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner.

LEGAL STANDARD

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner as to whether a claimant has a disability that would entitle him or her to an award of benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff maintains that the Commissioner's denial of his application for SSI benefits should be reversed and remanded for further proceedings because the ALJ: (1) applied the incorrect age category, (2) failed to properly evaluate the opinions of LCSW Cramer, OTR Maloney, and Nurse Carlson, and (3) made findings in his functional equivalence analysis that are not supported by substantial evidence.

<u>The ALJ's Use of the "School-Age" Child Category</u>

When conducting a functional equivalence analysis at step three of the Commissioner's sequential evaluation process for children, the ALJ must "look at how appropriately, effectively, and independently" the child performs his activities compared to the performance of other children the child's age who do not have impairments. 20 C.F.R. § 416.926a(b). To that end, the regulations for five of the six functional domains

9

involved in the analysis[5] include "age group descriptors" that "provide examples of activities that illustrate the typical functioning of children in different age groups." *Santos v. Barnhart*, No. 04 CV 2050 (JG), 2005 WL 119359, at *7 (E.D.N.Y. Jan. 7, 2005) (citing 20 C.F.R. § 416.926a(b)(1)). In addition, the regulations provide "[e]xamples of limited functioning" that an ALJ may consider for a domain, some of which "depend on [the child's] age and developmental stage . . . ." *See, e.g.,* 20 C.F.R. § 416.926a(g)(3) (listing the examples for the "Acquiring and using information" domain).

*The Parties' Respective Positions*

Plaintiff states that because he turned 12 years old prior to the hearing, there are two age categories relevant to his functional equivalence analysis: the "school age" category for children from the age of 6 to the attainment of age 12, and the "adolescent" category for children from the age of 12 to the attainment of age 18. Pl. Mem. of Law at 12 (citing 20 C.F.R. § 416.926a)). He also identifies a statement in the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX") that he construes to require the ALJ "to evaluate both age categories when a child claimant transitions to a higher age category during the relevant period." *Id.* (citing HALLEX I-5-4-30 (Question 28)). Therefore, Plaintiff maintains that the ALJ committed error when he used only the "school-age" child comparisons, and that the case should be remanded for consideration under the age category of "adolescent," as well. *Id.*

The Commissioner, however, maintains that remand is not warranted because Plaintiff misconstrues the instructions in the HALLEX. Mem. in Opp., 17–18, Aug. 23,

---

[5] The "Health and well-being" domain does not include "age descriptors." *See* 20 C.F.R. § 416.926a(l).

2021, ECF No. 16-1. That is, the Commissioner argues that the "HALLEX provides that while an ALJ <u>should</u> consider both categories, failure to do so is not reversible error since there is no advantage or disadvantage to be set to one age category or another." Mem. in Opp. at 18 (underline in the original). Further, the Commissioner argues that if the ALJ's categorization was error, it was "at most, harmless error, as it would not have changed the outcome of the ALJ's findings regarding the functional equivalence domain." *Id.*

*Application*

After a full review of the record, the Court finds that even assuming that it was error for the ALJ not to consider the "adolescent" age group, such an error would be harmless under the circumstances of this case. Plaintiff's date of birth was November 29, 2006. Tr. 207. The hearing before the ALJ was held on December 14, 2018, approximately two weeks after Plaintiff's twelfth birthday. Tr. 83. The ALJ found the testimony at the hearing to be of low reliability because there were several instances in which Plaintiff's testimony, as well as the testimony of his mother, was not fully consistent with the longitudinal medical evidence. Tr. 43. Other than the testimony offered at the hearing, there was no evidence in the record that was recorded after Plaintiff's twelfth birthday. Thus, the ALJ declined to rely on the only evidence in the record that was taken after Plaintiff turned twelve years old, which would have been the only evidence to which the "adolescent" age category was relevant. Consequently, even if the ALJ did commit error by not considering the adolescent age category, the error was harmless under the unique facts of this case.

<u>The ALJ's Treatment of LCSW Cramer, Nurse Carlson, and OTR Maloney's Opinions</u>

Plaintiff also argues that the ALJ's selective application of the new rules for the evaluation of opinion evidence led to evaluations of the opinions of Licensed Clinical

Social Worker ("LCSW") Cramer, Nurse Carlson, and OTR[6] Maloney that were not supported by substantial evidence. Pl. Mem. at 15. With respect to LCSW Cramer, Plaintiff states that the ALJ improperly discounted her opinion because it was "in a check-box form," and because she "is not an expert in SSA-program psychological disability evaluation . . . did not have the opportunity to review collateral records prior to offering her October 2018 opinions . . . . [and] her opinion was not consistent with or supported by the evidence in her own notes." Pl. Mem. at 16–17 (citing, *inter alia*, Tr. 45). With respect to Nurse Carlson and OTR Maloney, Plaintiff claims that "[t]he ALJ's reasoning for discounting [their] opinion is completely unfounded." Pl. Mem. at 19.

*Legal Principles*

The regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017, such that the "treating physician rule" no longer applies. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017). Under the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a), § 416.920c(a). Rather, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the

---

[6] "OTR" is the acronym for "Occupational Therapist, Registered." *See, e.g., D'Amico v. Saul*, No. 18-CV-110F, 2019 WL 2521185, at *3 (W.D.N.Y. June 19, 2019) (abbreviating "registered occupational therapist" as "OTR" in an challenge to a disability decision by the Commissioner).

treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c), § 416.920c(c).

Nevertheless, although the analysis is different, the ALJ still must articulate his consideration of the medical opinion evidence in the case record. 20 C.F.R. § 404.1520c(b), § 416.920c(b). In particular, the regulations state that the ALJ *must* explain how he considered the "supportability" and "consistency" factors for each medical source's opinion, but is not required to explain how he considered the remaining factors. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (citing 20 C.F.R. § 404.1520b, § 416.920b)). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1), § 416.920c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2), § 416.920c(c)(2). Provided the ALJ applies the correct standard, his finding is conclusive if it is supported by substantial evidence; a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted).

*Application to LCSW Cramer's Medical Opinions*

Applying 20 C.F.R. § 416.920c to the opinions expressed by LCSW Cramer after her assessments of Plaintiff in December 2016 (Tr. 389–94; 573–78) and October 2018 (Tr. 283–87), the ALJ found that her opinions were not persuasive. Tr. 45. With respect to the December 2016 assessment, the ALJ acknowledged LCSW Cramer's observations that Plaintiff struggled with maintaining eye contact and having reciprocal conversations, and that he tends to have "meltdowns" when he is frustrated. Tr. 44. However, pointing to LCSW Cramer's treatment notes from later sessions, the ALJ found her opinion not persuasive because it was not consistent with or supported by the longitudinal evidence of record, such as LCSW Cramer's subsequent note that Plaintiff "showed a 'more cooperative attitude' and an 'enhanced willingness to complete basic activities of daily living' . . . and has 'shown significant improvements in his ability to handle anger appropriately over . . . a six-month counseling period['] . . . ." Tr. 44 (citing Tr. 582–83, treatment notes from a January 2018 assessment). In addition, the ALJ noted that LCSW Cramer "is not an expert in SSA-program psychological disability evaluation" and that it's unclear whether she was familiar with other evidence in the record.

With respect to LCSW Cramer's October 2018 "Functional Capacity Assessment," the ALJ noted her comments that Plaintiff "struggles significantly with his ability to maintain and sustain social connections, communicate reciprocally with others . . . . [and] understand[ ] the social environment of the conversation." Tr. 45 (citing Tr. 283–84). The ALJ also noted LCSW Cramer's "check-box/fill-in-the-blank" assessment of extreme limitation in the attending and completing tasks domain, and marked limitation in three of the other domains. Tr. 45 (citing Tr. 285–87). Nevertheless, the ALJ found these

14

assessments to be inconsistent with the longitudinal record, including LCSW Cramer's treatment notes from July 2018, in which she stated that Plaintiff was "overall . . . doing better" and "showing more maturity." Tr. 45 (citing Tr. 579–80). The ALJ also again observed that LCSW Cramer is not an expert in the Commissioner's disability evaluation and did not review collateral records. Tr. 45.

Plaintiff seems to find error in the ALJ's observation that LCSW Cramer's October 2018 assessment was a "check-box/fill-in-the-blank." Pl. Mem. of Law at 16. Although Plaintiff rightly notes that LCSW Cramer's responses are supplemented by written narrative, the ALJ's consideration of the form of the opinion is not without precedent. *See, e.g., Rivera v. Berryhill*, No. 3:17-CV-01726 (RMS), 2018 WL 6522901, at *12 (D. Conn. Dec. 12, 2018) (noting that "[t]he Second Circuit has shared in the skepticism of check-box or fill in the blank forms that are unaccompanied by written reports or other objective evidence," and collecting cases). More to the point, the new regulations regarding the consideration of medical opinion evidence specifically require the ALJ to consider, with respect to supportability, "the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion(s) . . . ." 20 C.F.R. § 416.920c(c)(1). As a result, the form of the opinion is relevant to supportability. So, too, is the ALJ's consideration of LCSW Cramer's familiarity with both the Commissioner's disability rules, and the collateral evidence in the case. *See* 20 C.F.R. § 416.920c(c)(5) ("We will consider other factors that tend to support or contradict a medical opinion . . . . [including] evidence showing a medical source has familiarity with other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.").

15

Plaintiff also argues that the ALJ misconstrued the record when he quoted LCSW Cramer's "showing more maturity" comment, because – according to Plaintiff – the full quote from LCSW Cramer's opinion was "We will continue to work towards him showing more coping skills." Pl. Mem. at 17 (citing Tr. 580). However, while the comment Plaintiff cites is certainly in the record (Tr. 580), the ALJ's decision was almost certainly referring instead to LCSW Cramer's observation in the same treatment note that "[Plaintiff] overall is doing better and showing more maturity" (Tr. 579). Thus, Plaintiff's assertion that the ALJ has misconstrued the record is without basis.

It is the Commissioner's role to resolve conflicts in the evidence, not the Court's. *Veino v. Barnhar*t, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Accordingly, because the ALJ's evaluation of LCSW Cramer's opinion articulates his findings on consistency, supportability, and persuasiveness, and because his findings are supported by more than a "mere scintilla" of evidence, the Court finds no merit in Plaintiff's position.

*Application to Nurse Carson's and OTR Maloney's Non-medical Opinions*

Plaintiff also argues that the ALJ's evaluation of Nurse Carson's and OTR Maloney's non-medical opinions was unsupported by the evidence. In particular, Plaintiff asserts that the ALJ insinuated that Nurse Carson and OTR Maloney had "somehow blocked the real teachers from providing an opinion." Tr. 18. Plaintiff implies that the ALJ's belief that these two individuals were purporting to be Plaintiff's math and English Language Arts teacher caused the ALJ to find their opinions unpersuasive. Tr. 46. Plaintiff's arguments in this regard are without merit.

To be sure, the "Teacher Questionnaire" that includes the opinions of both Nurse Carlson and OTR Maloney is confusing. On the first page, the questionnaire asks "how often . . . did you, see this child?" Tr. 199. The respondent handwrote, "[Plaintiff] was seen for Math and ELA everyday throughout the school year," and indicated that each subject was approximately 1.5 hours per day. Tr. 199. Thereafter, the questionnaire asks the "teacher" to rate Plaintiff – on a scale of 1 to 5 – on a number of factors related to each of the six domains of the Commissioner's functional equivalence analysis for children, and provide a supplemental written narrative. Tr. 200–06. OTR Maloney signed below the narrative for two of the domains, and at the end of the entire questionnaire. Tr. 203, 204, 206. Nurse Carlson signed the end of the questionnaire, as well. Tr. 206. It is not clear who completed the unsigned sections of the questionnaire. Moreover, the ALJ considered Nurse Carson's and OTR Maloney's statements and found them to be "not fully consistent with or supported by" the opinions expressed by Plaintiff's Math teacher (Mr. Stark; Tr. 303–10) and Speech teacher (Ms. Russell; Tr. 317–21) in separate exhibits. Tr. 46.

Given the general ambiguity regarding the source of the opinions in the questionnaire completed by Nurse Carlson and OTR Maloney, and their inconsistency with Plaintiff's other teachers, the Court finds no error in the ALJ's determination that the opinions were "not fully persuasive." *See also* 20 C.F.R. 416.920b(b)(3) ("We consider evidence to be inconsistent when it . . . is ambiguous . . . . When there are inconsistencies in the evidence we cannot resolve . . . we will make a determination . . . based on the evidence we have.).

The Evidence Supporting the ALJ's Decision

Lastly, Plaintiff maintains that the ALJ's findings in his functional equivalence analysis in the domains of relating to others and caring for self were not supported by substantial evidence. Rather, Plaintiff claims that the record provides substantial support for a marked limitation in both domains. Pl. Mem. at 21, 25.

*Relating to Others*

In the "Interacting and relating with others" domain, the Commissioner considers how well the child claimant initiates and sustains emotional connections with others, develops and uses the language of the claimant's community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). For comparison's sake, the Commissioner describes appropriate activities for school-age children in this domain as being able to develop more lasting friendships with children of the same age; beginning to understand how to work in groups to create projects and solve problems; having an increasing ability to understand another's point of view and tolerate differences; and being able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv).

In his decision, the ALJ found that Plaintiff "has less than marked limitation in interacting and relating with others." Tr. 50. He stated:

> [Plaintiff]'s teacher questionnaire from his special education teacher for math and English shows an obvious problem in the [Plaintiff]'s ability to play with other children cooperatively and make and keep friends, but otherwise has no problems to only a slight problem in this area. [Tr. 306]. His school-based speech and language pathologist teacher questionnaire also indicated an obvious problem in his ability to relate experiences and tell stories and that his visual attention to non-verbal communication is

18

> inconsistent which contributes to his misunderstanding. [Tr. 317]. Yet, the [Plaintiff]'s mother alleges serious limitation in this area based on her subjective report of the [Plaintiff]'s functioning in the home, including throwing objects, kicking others, and rolling around the floor. [Tr. 225–26; 580]; (Hearing Testimony). However, the [Plaintiff]'s mother failed to report this level of dysfunction to the [Plaintiff]'s treating pediatrician and medication prescriber. *See e.g.* [Tr. 537–49] (noting that the claimant's pediatrician noted on several occasions that the claimant is "described as generally well behaved, both at home and at school" with "no behavior problems" and that he plays sports, does hobbies, and helps out around the house). This is consistent with less than marked limitation at most in this area.

Tr. 50.

### *Caring for Self*

In the "Caring for yourself" domain, the Commissioner considers how well the child maintains a healthy emotional and physical state, including how well he gets his physical and emotional wants and needs met in appropriate ways, how he copes with stress and changes in his environment, and whether he takes care of his own health, possessions, and living area. 20 C.F.R. § 416.926a(k). For comparison's sake, the Commissioner describes appropriate activities for school-age children in this domain as being independent in most day-to-day activities (e.g., dressing and bathing self), although they may still need to be reminded sometimes to do these routinely. 20 C.F.R. § 416.926a(k)(2)(iv). Children this age should begin to recognize they are competent in doing some activities and that they have difficulty with others; be able to identify those circumstances when they feel good about themselves and when they feel bad; begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior; and begin to demonstrate consistent control over their behavior, avoiding behaviors that are unsafe or otherwise not good for them. *Id.*

19

In his decision, the ALJ found that Plaintiff has less than a marked limitation in the ability to care for himself. Tr. 52. He stated:

> The [Plaintiff]'s special education teacher for math and English, who admitted that she has only known the [Plaintiff] for two months at the time she offered her statement, reported that the [Plaintiff] has a serious problem taking care of personal hygiene tasks and has an obvious problem with handling frustration appropriately, being patient when necessary, and carrying for his physical needs such as dressing or eating. [Tr. 303, 308]. However, the [Plaintiff]'s long-term treating school-based speech and language pathologist, who had known the [Plaintiff] for three years at the time she offered her statement, the [Plaintiff] has a slight problem in handling frustration appropriately and has no other issues in this area. [Tr. 319]. The [Plaintiff]'s mother also testified that the [Plaintiff] does not bathe unless she makes sure he completes the task and that this only happens about once per week. The [Plaintiff]'s mother also reported that the [Plaintiff] is able to get to school on time, eats independently using cutlery, chooses his clothing and uses buttons independently, and uses a zipper independently. [Tr. 226]. This is consistent with less than marked limitation at most in this area.

Tr. 52.

## Application

Plaintiff argues that the ALJ's explanations regarding the foregoing functional domains demonstrates the ALJ failed to consider the entirety of the evidence. In support of his argument, Plaintiff identifies multiple instances of evidence in the record that he believes to show his limitations to be more than marked. Pl. Mem. at 20–24.

Notwithstanding Plaintiff's arguments, however, the question for the Court on review of the Commissioner's decision is not whether there is substantial evidence supporting the Plaintiff's view, but rather "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (citing, *inter alia*, *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013)). As the Supreme Court has explained:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid*. . . . . It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229 . . . .

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court finds that the ALJ's decision in the present case is supported by substantial evidence. The ALJ's explanation and citations to the record demonstrate that he carefully reviewed the opinions submitted by a wide variety of individuals familiar with Plaintiff's activities of daily living, including his mother, his teachers, his ARC counselor, and his speech pathologist. Tr. 50. In addition, he compared these opinions with the records of Plaintiff's primary care physician and the other longitudinal evidence, and concluded that Plaintiff's limitations are less than marked.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 14] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 16] is granted. The Clerk of Court is directed to close this case.

DATED:     March 28, 2022
           Rochester, New York


                              HON. CHARLES J. SIRAGUSA
                              United States District Judge

21